## D. S. TOBIN v. W. U. TELEGRAPH CO.

APPEAL-BY DEFENDANT FROM THE COURT OF COMMON PLEAS NO. 2 OF ALLEGHENY COUNTY.

Argued October 28, 1891—Decided January 4, 1892.

1. Where the recipient of a telegram, sent from Staten Island but reading as if sent from South Carolina, after inquiry at the telegraph office and finding it closed was misled into taking a fruitless trip to South Carolina, it cannot be said as matter of law that he was chargeable with contributory negligence.

2. In such case, the telegraph company was not relieved from liability, by the fact that the plaintiff did not have the message delivered to him repeated back, in accordance with a rule of the company limiting its responsibility to messages so repeated. The rule applied to the sender, not to the recipient.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 12 October Term 1890, Sup. Ct.; court below, No. 540 October Term 1889, C. P. No. 2.

Returnable to the first Monday of October, 1889, Daniel S. Tobin brought trespass against the Western Union Telegraph Company. Issue.

At the trial, on October 24, 1890, the plaintiff testified that he resided at McKeesport, Pa., and had a sister living in Long Island City, N. Y., on the western end of Long Island; that his sister had disappeared some time during the first week of May, 1889, and he had gone to New York to search for her; that, fearing she had been drowned, he left word at the morgues in New York city, Jersey City, Brooklyn and Staten Island, to telegraph him immediately in case his sister's body should be found; that he returned to McKeesport, and a few days thereafter, to wit, on May 12th, the following message was delivered to him on the street by the defendant company:

"May 12, 1889. Quarantine, S. C. (I.) To DANIEL S. COBIN, McKeesport, Pa. Found the body of Mary E. Cobin. Coroner HUGHES, Clifton, S. C. (I.)"

In the message as delivered, the C. was written over the I.

Charge of Court below.

The blank upon which it was written contained the following conditions:

" This company transmits and delivers messages only on conditions limiting its liability, which have been assented to by the sender of the following message.

" Errors can be guarded against only by repeating a message back to the sending station for comparison, and the company will not hold itself liable for errors or delays in transmission or delivery of unrepeated messages, beyond the amount of tolls paid thereon; nor in any case where the claim is not presented in writing within sixty days after the message is filed with the company for transmission.

" This is an unrepeated message, and is delivered by request of the sender, under the conditions named above."

The plaintiff testified that he was uncertain whether the message meant Staten Island or South Carolina; that, being Sunday, the telegraph office was open only between eight and ten o'clock, A. M. and four and six o'clock, P. M.; that, being in doubt whence the message came, he went to the office to inquire, but finding it closed he showed the message to a clerk in a drug store in the same building, who informed him that it was South Carolina; that the next morning by an early train he started for Clifton, South Carolina, and on his return from that state he found that his sister's body had been recovered at Clifton, Staten Island. Evidence was given as to expenses of travel, etc.

At the close of the testimony, the court, EWING, P. J., charged the jury in part as follows:

Now, there is no absolute evidence that this was not sent from Clifton, South Carolina, but there is circumstantial evidence from which the jury may or may not find that it was not, namely: it appears that Clifton, South Carolina, if there is such a place, is away in the mountainous region, in the interior and not on the sea coast; and that there is a Clifton on Staten Island, New York, from which Mr. Tobin received the communication in relation to the body of his sister thereafter from the coroner, and there is circumstantial evidence, which we think the jury are entitled to pass on, as to whether or not any such message ever was sent from South Carolina, or even from Staten Island; whether there was any paper left that author-

Charge of Court below.

ized or justified the delivering of a message to Mr. Tobin at McKeesport, as from coroner Hughes, in Clifton, South Carolina.

I have said in your presence, in answer to counsel for defendant, and I repeat it here that it may go on record, that the defendant presumably has in its possession the paper that was delivered to it from which to send the telegram, which it could have produced readily. It is true, the other side could have had it produced. It would have been much more satisfactory, if one side or the other had done so. But we do not think the case is free from evidence that no message was ever delivered to the Western Union Telegraph Co., equivalent to the one delivered to Mr. Tobin, if he received that message, which he says he did, and it is for the jury to determine.

[Again; it is claimed that on the face of the telegram, or paper sent to him or delivered to him, it is said that the company does not guarantee the correctness of the message unless it be repeated. It is not necessary for us to say whether or not that is valid. I do not understand any such provision on the face of their paper, or the copy delivered to the party, will save them from the consequences of their own negligence. They are to be treated as common carriers in that way.][3] . . . .

There is another branch of the case, and it is a question for the jury,—the court will not undertake to pass on it; and that is as to whether or not the plaintiff himself exercised reasonable care under the circumstances in starting off on this telegram that he says he received, which on its face showed an erasure, at least in one of the places, showed that it had been changed from " S. I." to " S. C." It occurs twice, and it is plain in the place from which it professes to be sent that there has been a change by somebody on the face of this paper in evidence from " S. I." to " S. C." In the lower part, where it says " Coroner Hughes, Clifton, S. C.," it is not so plain that there has been any change, although I think I would say in looking at it that there has been, but a casual observer might pass it without seeing that a change had been made. In the other one, the first place it occurs, I do not think even a casual observer could pass it without seeing it was changed. You have that fact, and also the fact that the plaintiff went to the office and the operator was away ; and you have, in addition, against him, the fact that

the sister had disappeared from New York, not from near South Carolina.

Now he was bound to exercise reasonable care; and we think that the change on the face of the telegram is a matter that the jury should take into consideration as to whether or not he exercised reasonable care in going off to South Carolina, without getting an answer from Coroner Hughes, or doing something more to ascertain where Clifton in South Carolina was; and if you find that he did not exercise reasonable care, it is his own fault, and he must stand the loss. I repeat, to find for the plaintiff you must find, first, that the defendant company was guilty of negligence through its officers or employees, causing him to start off to South Carolina; and then, in addition to that, that he himself was free from negligence, namely, that he exercised reasonable care.

If you find for the defendant, you are not troubled about the damages. If you find for the plaintiff, the expenses of his trip would be all that he would be entitled to.

Counsel for defendant request the court to charge the jury:

1. That, under all the evidence in this case, their verdict should be for the defendant.

2. That, as under the uncontradicted evidence this is an unrepeated message, and no request was made to repeat the same, or charge paid therefor, there can be no recovery beyond the amount paid for sending the message.

Answer : These points are refused.[1] [2]

—The jury returned a verdict for the plaintiff for $71.25. Judgment having been entered, the defendant took this appeal, assigning for error:

1, 2. The answers to the defendant's points.[1] [2]

3. The portion of the charge embraced in [ ] [3]

*Mr. Geo. B. Gordon* (with him *Mr. John Dalzell* and *Mr. William Scott*), for the appellant.

Counsel cited : (1, 2) Thompson on Telegraphs, § 417 ; W. U. Teleg. Co. v. Neill, 57 Tex. 283 (44 Am. Rep. 589) ; Nusbaum v. Telegraph Co., 17 Phila. 340 ; Hart v. Cable Co., 86 N. Y. 633 ; Shear. & Redf. on Neg., § 741 ; Reddington v. Traction Co., 132 Pa. 154 ; Koons v. Telegraph Co., 102 Pa. 164. (3) W. U. Teleg. Co. v. Stevenson, 128 Pa. 442 ; MacAndrews v. Tele-

Opinion of the Court.

graph Co., 17 C. B. 3; Redpath v. Telegraph Co., 112 Mass. 71; Clement v. Telegraph Co., 137 Mass. 463.

*Mr. T. C. Jones*, for the appellee.

Counsel cited: New York etc. Teleg. Co. v. Dryburg, 35 Pa. 298; W. U. Teleg. Co. v. Richman, 19 W. N. 569 (6 Cent. R. 565); Harris v. Telegraph Co., 9 Phila. 88.

PER CURIAM:

The learned judge below could not have withdrawn this case from the jury, as requested by defendant's first point. See first specification. There was a palpable error in the telegram, by which the plaintiff was misled and by reason thereof incurred considerable expense in a fruitless journey to South Carolina. It is no answer to this to say that some persons might not have been misled by such a blunder, and would have made further inquiry before starting upon the journey. In point of fact, the plaintiff was misled, and we cannot say he was guilty of contributory negligence.

Nor do we think the fact that the message was not repeated has any bearing upon the case. See second specification. The condition in repeated messages applies to the person sending the message, not to its recipient: W. U. Teleg. Co. v. Richman, 19 W. N. 569 (6 Cent. R. 565). In N. Y. etc. Teleg. Co. v. Dryburg, 35 Pa. 298, it was held that the company was not excused from liability to third persons for damages sustained by the negligent transmission of an erroneous message, by the fact that the sender did not pay for its being repeated back, in accordance with a rule of the company whereby they limited their responsibility to the transmission of messages that should be repeated back. What has been said covers the remaining specifications of error.

Judgment affirmed.