# Wolf Company *v.* Western Union Telegraph Company, Appellant.

*Telegraph companies—Negligence—Mistake in message—Contract.*

Where the cost of machinery stated in a telegram from the manufacturer is made the basis of a contract between the receiver of the telegram and a third person, and it subsequently turns out that the cost of the machinery was much greater than that stated in the telegram, and that the mistake was due to the operator of the company and not to the sender of the telegram, the telegraph company will be liable to the person receiving the telegram and making the contract, for the amount of his loss.

In such a case where the telegraph company produces a witness whose testimony tends to show that the mistake was due to the carelessness of the sender in dictating the telegram, it is competent for the plaintiff to show on cross-examination that the negligence was not that of the author of the message, but that of the operator in transmitting it.

In an action against a telegraph company to recover damages resulting from the negligent transmission of a telegram, if the evidence is conflicting, the case is for the jury, but if one of the essential facts is undisputed, the court may refer to that fact as an element of negligence, if it leaves the other facts for the determination of the jury.

Argued Oct. 20, 1903. Appeal, No. 107, Oct. T., 1903, by defendant, from judgment of C. P. Franklin Co., Sept. T., 1902, No. 104, on verdict for plaintiff, in case of Wolf Company v. Western Union Telegraph Company. Before RICE, P. J., BEAVER, ORLADY, PORTER, SMITH, MORRISON and HENDERSON, JJ. Affirmed.

Trespass for negligence in the transmission of a telegram. Before JOHN STEWART, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $935.05. Defendant appealed.

*Errors assigned* were (1) " That the learned judge who tried the cause erred in overruling the objection of the defendant and admitting the testimony of the witness, George W. Klee, in answer to the question: Would you not consider it negligence on the part of any telegraph operator to undertake to substitute words for figures in a message ? " (2, 3) instructions quoted at length in the opinion of the Superior Court; (4) portion of charge as follows : " Now, if you find that the defendant did not correctly transmit the Osborn telegram to the Wolf Company, but negligently committed a mistake, whereby the words ' Seventeen hundred dollars ' were communicated to the plaintiff as 'seven hundred dollars,' then you will proceed to inquire whether the plaintiff was, by reason of such negligence, misled to his prejudice and damage. The evidence on this branch of the case rests mainly on the testimony of Mr. Pollard, who was the business manager of the plaintiff, and who conducted this particular negotiation. He says that, relying on the integrity and genuineness of this Osborn telegram of August 9, he agreed for the plaintiff to supply the Schaff Electric Company, the plant described in his letter to the Erie City Iron Company, and referred to in his telegram, at a much lower price than he was able to procure it for; that for what he had estimated in his bid at $735, covering this particular machinery, plaintiff was obliged to pay $1,610. This testimony is not contradicted, nor is it impeached, and you will be likely to accept it as correct and true."

*H. B. Gill,* with him *Gillan & Gillan,* for appellant, cited : Ayer v. Western Union Tel. Co., 79 Me. 493 (10 Atl. Repr. 495); Haubebt Bros. v. Mill Co., 77 Mo. App. 672; Western Union Tel. Co. v. Shotter, 71 Ga. 760; N. Y., etc., Printing Telegraph Company v. Dryburg, 35 Pa. 298.

*W. K. Sharpe,* of *Sharpe & Elder,* with him *J. A. Strite,* for appellee.

OPINION BY BEAVER, J., January 21, 1904:

The plaintiff, being about to submit estimates to the Schaff Electric Company, which was negotiating for the erection of a municipal electric light plant for Shepherdstown, West Virginia, made inquiry of the Erie City Iron Works for estimates upon certain machines needed in the erection of said plant. The inquiry not being promptly answered, he telegraphed Osborn, the agent of the said iron works: "Estimate Shepherdstown must be submitted tomorrow. Have you mailed proposals?" The plaintiff received, in response thereto, by telegraph, through the defendant company: "All machinery as per your letter 3rd instant, $735.00 f. o. b. Erie." Making up his estimates upon the amount mentioned in the telegram, he submitted proposals to the Schaff Electric Company, basing them upon the amount contained in the telegram. The Schaff Electric Company, of which the plaintiff was a member, made its bid to the municipal authorities of Shepherdstown, based upon the price contained in the telegram, which bid was accepted and a contract made in accordance therewith.

The specifications, accompanying the bid of the Schaff Electric Company, contained a description of and a statement that the engine to be supplied "is built by the Erie City Iron Works, Erie, Pa. It is well built, of thoroughly good materials and well proportioned throughout. Careful tests have proven it to be one of the best high speed engines on the market." It became incumbent, therefore, upon the Schaff Electric Company to furnish this engine, but, upon attempting to make a contract therefor, in accordance with the telegram received by the plaintiff, it was discovered that the price, instead of being $735, as contained in Osborn's telegram, as delivered to the plaintiff, was $1,735, f. o. b. Erie. Osborn's estimate, as communicated to the defendant for transmission as a telegram, contained the correct amount, but the telegram, as sent by the defendant and delivered to the plaintiff, was, as above stated, $735.

The contract was finally made with the Erie City Iron Works for the engine and machinery, which had been estimated to cost $1,735, at $1,610, which sum the plaintiff alleged he was compelled to pay, and brought suit against the defendant for the difference between that amount and $735

erroneously communicated to him by the defendant as the price of the said engine and machinery, upon the faith of which telegram he made the estimates to the Schaff Electric Company, relying upon which the latter company made its contract with the municipal authorities of Shepherdstown.

Was the defendant liable to the plaintiff under the circumstances for the difference between the amount actually and necessarily paid for the machinery, in order to make good the contract between the latter and the Schaff Electric Company and the amount contained in the telegram, as delivered by defendant to plaintiff as the cost of said machinery? This is the real question involved, although stated in different form by the appellant.

There are several assignments of error, all relating more or less directly to the question involved, which may probably best be disposed of seriatim.

1. The first assignment relates to the admission of the testimony of defendant's witness, offered by it as an expert, in the answer to a question on cross-examination stated in the assignment, but the answer is not given, nor is the page on which the testimony is contained stated. The assignment is, therefore, framed contrary to our Rule 16. Independently of this, however, the witness was introduced by the defendant and the effort made to prove by him, as shown in its offer which we quote, " It having been shown that the plaintiff's witness in this case requested one, W. B. Osborn, of Clarksburg, West Virginia, to communicate with him by telegraph, and it having been further shown that the said W. B. Osborn dictated to the operator at Clarksburg, West Virginia, that which he desired to communicate, by figures instead of by letters, we propose to show that that was a careless way of using the telegraph, and that a mistake would be much more likely to occur by reason of using the figures than the letters; that, therefore, the defendant in this case is not guilty of negligence, it appearing in the evidence that Osborn, in communicating this to the plaintiff, was acting as the agent of the plaintiff for that business." To this offer the plaintiff strenuously objected but the objections were overruled and the question allowed. It was clearly competent, therefore, for the plaintiff, on cross-examination, to show that the negligence

was not that of the author of the message to be transmitted but that of the defendant, through its operator, in transmitting it. Negligence in the question asked on cross-examination evidently refers to a careless or negligent manner of transmitting a message and is not used in its technical, legal sense. In view of the course of the examination in chief by the defendant, we think the question was entirely proper and the testimony elicited by it, competent.

2. Error is assigned to the following paragraph in the charge of the court below : "Was there any error or mistake in the transmission of the Osborn telegram ? If there was and the error consisted, as is claimed, in dropping from the word 'seventeen' the last four letters and making it read 'seven,' or in any way making 'seven' stand for 'seventeen,' as indicated by the sender of the message, for all that appears in the case it could be nothing short of negligence, for which the defendant company would be liable." In this paragraph the jury were left to determine the facts. This is clearly evident from the interrogative and hypothetical character of the instructions,—"Was there error ? If there was," etc. Whether a given state of facts constitutes negligence is generally a question of law for the court but whether the facts have been established or whether the witnesses are to be believed are questions for the jury. We cannot say that this rule has been in any way invaded by the paragraph complained of. In United States Tel. Co. v. Wenger, 55 Pa. 262, which was an action for the recovery of damages for a failure to deliver a message, Mr. Justice Thompson says: "No such reason as the law would recognize, indeed no reason at all, was given for the failure to transmit the message to its destination; thus was there presented a clear case of gross negligence against the company in performing its undertaking and a consequent liability to the plaintiff for such damage as he had sustained in consequence thereof." The fact of the failure to transmit being established, the question of negligence and consequent liability was one of law. In the case under consideration, the fact of the mistake in transmission, seven being substituted for seventeen, is practically admitted by the defendant, and we fail to see that being so, how any greater burden was imposed upon the defendant by the charge of the court than it was bound to bear.

3. The defendant complains of the court's refusal to answer the following point without reading it: "The court is respectfully requested to instruct the jury, that if they believe from the evidence that the plaintiff received, on the 9th day of August, 1901, from the Erie City Iron Works, or its authorized agent, a communication by telegraph stating that they, the said Erie City Iron Works, would furnish plaintiff certain articles for $735, and if they further find that this communication by telegraph was in answer to an inquiry made by plaintiff by letter of August 3, 1901, asking the price of the articles described in said letter, and if they further find that the Erie City Iron Works selected the telegraph as a mode of communication without any request on the part of the plaintiff that they use that method of communication, then the Erie City Iron Works were legally bound to furnish the engine, boiler, etc., described in plaintiff's inquiry of August 3, 1901, and if the plaintiff voluntarily relieved them of that legal liability to his own loss, he cannot recover that loss from this defendant." This point assumes too much. The telegram communicated by the defendant to the plaintiff, as having been sent by the agent of the Erie City Iron Works, was merely an estimate and did not and could not constitute a contract, for the reason that no such contract could be made until the contract of the Schaff Company with the Shepherdstown municipality was concluded. The plaintiff's contract, it is true, was based upon that estimate; but when its contract with the Erie City Iron Works was sought to be made, the mistake was discovered. It is assumed further that the defendant was the agent of the Erie City Iron Works in transmitting this estimate and that the latter company was bound by the error of the defendant. Whilst it may be true that in a sense the defendant was the agent of the iron company, it was such for the purpose of transmitting a telegram, estimating the cost of certain articles at $1,735. It was not bound, it seems to us, by a telegram offering the same articles for $735, and, in refusing to be bound by the telegram as delivered to the plaintiff, the iron company did not render itself liable for the difference between the estimate delivered to the defendant and that which was transmitted and delivered to the plaintiff by it. If it had been so, there could be no doubt of the liability of the defendant to the Erie City Iron Company

and, the measure of damages being the same, the amount thereof, namely, the difference between $1,735 and $735, would have exceeded what is claimed here by $125. The defendant is, therefore, not in any way injured, but, on the contrary, actually benefited to that extent. We think the point was properly answered.

As a general rule, the party who is injured has the right to the damages arising from the injury. The Erie City Iron Works was not in any way injured. Its proposal or estimate was not accepted. If it had been, without repeating the terms, another question would arise which we need not now consider, namely, the one stated in Ayer v. Western Union Telegraph Co., 76 Me. 493 (10 Atl. Repr. 495), cited by the appellant. That is the case of the liability of the sender of a message to the receiver where a proposition has been accepted, but even there it is held that the sender has a remedy over against the company when the error is the result of its negligence. That is not the question here. The Erie City Iron Co. was not liable, inasmuch as its estimate had not been accepted. The plaintiff suffered the loss by making his contract based upon an estimate contained in the telegram which was confessedly erroneous.

4. In this view of the case, we see nothing erroneous in the instructions assigned for error in the fourth assignment. This is a careful, concise and comprehensive view of the case. It leaves the jury to find or not to find the facts outlined therein. The declaration at the close, that " this testimony is not contradicted, nor is it impeached, and you will be likely to accept it as correct and true," is not binding and is justified, in our opinion, by the evidence in the case.

We have been much aided in the consideration of this case by Pepper v. Western Union Telegraph Co., 4 L. R. A. 660, and Postal Tel. Cable Co. v. Lathrop et al., 7 L. R. A. 474, where, in the opinions and briefs, the entire question of liability of a telegraph company for transmitting erroneous messages is exhaustively considered.

On the whole case, as presented, we see nothing erroneous. Judgment affirmed.