# Bailey & Company *v.* Western Union Telegraph Company, Appellant.

*Telegraph and telephone companies—Intelligible messages—Messages in cipher—Error in transmission—Liability in tort to addressee—Measure of damages—Proof of delivery—Prima facie presumption—Burden.*

1. A telegraph company is liable in tort to the addressee for injuries arising out of the negligent transmission of an intelligible message; the measure of recovery being the actual damages sustained.

2. Proof of the delivery of the erroneous or altered telegram in an action of tort, establishes, prima facie, the negligence of the telegraph company, and casts upon it the burden of excusing itself, and of showing that the error was caused by some agency for which it is not liable.

3. A message containing but two code words, sent by a manufacturing company and manifestly referring to a commercial transaction, which in terms shows anxiety on the part of the sender that the firm to which it is addressed will sell something, is not subject to the rule applicable to messages in cipher and unintelligible except to the sender and sendee.

4. A telegraph message need not disclose on its face the nature of the business, so that its meaning as to quantity, quality or value may be disclosed to the operator; if it shows that it relates to a commercial or legal transaction of value it is sufficient.

5. The fact that a telegraph message is sent and received by parties evidently engaged in business operations and that part of it is in cipher should be notice to the operator that it relates to business matters of importance to the parties, and some of which matters they wish to conceal from the general public and about which they wish to communicate without delay. It is therefore sufficient notice to a telegraph company if the message shows on its face that it relates to a commercial transaction of importance without giving the details of the transaction.

6. Where a dry goods manufacturing company, in reply to a telegram containing an offer for a certain quantity of goods, deposits with a telegraph company for transmission to a commission firm who are the exclusive agents of the manufacturing company, the following telegram: "Anxious that you sell summer deliveries of decade at chaplet," written on a blank containing the usual stipulations limiting the company's liability for unrepeated messages, and the telegraph company delivers the telegram, an unrepeated night message, to the commission firm in the following form: "Anxious that you sell summer deliveries of decade at chapel," the effect being a change in the

price of the goods from five cents to four and seven-eighths cents per yard, resulting in a loss of one-eighth cent per yard on many thousands of yards sold by the commission firm, before the mistake was discovered, such loss may be recovered from the telegraph company and the latter cannot defalk a fixed commission received by the commission firm, as exclusive selling agents and bankers of the manufacturing concern, of four per cent of the gross selling price of all sales of the manufacturing company's product; the parties, in such cases, being entitled to all the legitimate benefits of the contract, including profits and compensation for services rendered and liabilities assumed.

*Telegraph and telephone companies—Printed notice on back of blank—Exemption from liability—Negligence.*

7. The rule or notice of exemption from liability printed on the back of the blank on which the sender writes the message does not apply to the recipient of a message, and will not relieve the telegraph company from liability to him for errors in transmission.

8. A telegraph company may make reasonable rules affecting its responsibility, but it cannot stipulate for exemption from liability caused by its own negligence.

Argued Jan. 11, 1910. Appeal, No. 138, Jan. T., 1909, by defendant, from judgment of C. P. No. 5, Phila. Co., March T., 1907, No. 1,286, on verdict for plaintiff in case of Joshua L. Baily, Frederick L. Baily et al., trading as Joshua L. Baily & Company v. Western Union Telegraph Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass for wrongful delivery of a telegraph message. Before RALSTON, J.

The facts appear in the opinion of the Supreme Court.

Defendant's points all of which were declined were as follows:

1. The message in suit, being a cipher message, not disclosing the results of error in transmission, the company is only liable for such error in nominal damages.

2. In adopting a code containing two words so closely resembling each other in their spelling, as "chapel" and "chaplet" and allowing these two such words to designate prices only one-eighth of a cent apart, the plaintiffs were guilty of contributory negligence, and are not entitled to recover.

3. The telegram for the error in which this suit is brought, being sent in reply to the telegram from the plaintiffs to the Glenn-Lowry Manufacturing Company of the same day, the plaintiffs are bound by the terms and conditions under which the telegram was accepted and transmitted by the defendant company, and inasmuch as by the terms and conditions under which the telegram was sent it was expressly agreed that the company should not be liable for mistakes or delays in the transmission or delivery of any unrepeated message beyond the amount received for sending the same, nor in any case for errors in cipher or obscure messages, the plaintiff under the evidence of this case is not entitled to recover more than the amount paid for sending the same.

4. The Glenn-Lowry Manufacturing Company was bound by the terms of the telegram sued on as delivered to the plaintiffs, and if the plaintiffs voluntarily declined to enforce the same, they are not entitled to recover from the defendant the loss suffered by reason thereof.

5. Under all the evidence your verdict must be for the defendant.

*Errors assigned* were (1–5) refusal of points and (7) refusal to enter judgment non obstante veredicto.

*H. B. Gill,* with him *John R. Read* and *Louis B. Runk,* for appellant.—It is incumbent in every case upon an injured party to do whatever he reasonably can to lessen the injury: Penna. R. R. Co. v. Titusville, etc., Co., 71 Pa. 350; Chamberlin v. Morgan, 68 Pa. 168; Barkley R. R. & Coal Co. v. Ingham, 36 Pa. 194; Baldwin v. Tel. Co., 45 N. Y. 744; Morris v. Supplee, 208 Pa. 253; Pittsburg Mfg. Co. v. Steel Co., 201 Pa. 150; Wolf v. Tel. Co., 24 Pa. Superior Ct. 129.

The plaintiffs did not in fact suffer any loss: Joynes v. Postal Tel. Cable Co., 37 Pa. Superior Ct. 63; Hinde v. Smith, 6 Lansing (N. Y.), 464; Dalby v. Stearns, 132 Mass. 230; Frothingham v. Everton, 12 N. H. 239; Bigelow v. Walker, 24 Vt. 149; Rollins v. Duffy, 18 Ill. App. 398; Dazey v. Roleau, 111 Ill. App. 367.

The message did not disclose the probable results of any negligence, and it was an unrepeated message: Passmore v. Tel. Co., 78 Pa. 238; Primrose v. Tel. Co., 154 U. S. 1 (14 Sup. Ct. Repr. 1098); Ferguson v. Tel. Co., 178 Pa. 377; City v. Zimmerman, 95 Pa. 287; Abeles v. Tel. Co., 37 Mo. App. 554.

The plaintiffs were bound by the conditions under which the telegram was sent: Coit v. Tel. Co., 130 Cal. 657 (63 Pac. Repr. 83); Halsted v. Tel. Cable Co., 193 N. Y. 293 (85 N. E. Repr. 1078); Becker v. Tel. Co., 11 Neb. 87; Joynes v. Cable Co., 37 Pa. Superior Ct. 63; Playford v. Tel. Co., L. R. 4 Q. B. Cases, 706; Dickson v. Tel. Co., L. R. 2 C. P. Div. 62; Manier v. Tel. Co., 94 Tenn. 442 (29 S. W. Repr. 732); Tel. Co. v. James, 90 Ga. 254 (16 S. E. Repr. 83); Curtin v. Tel. Co., 38 N. Y. Supp. 58.

*John G. Johnson,* with him *James Wilson Bayard,* for appellee.—The appellant is liable in damages to the appellee for the error in transmission of the telegram: Primrose v. Tel. Co., 154 U. S. 1 (14 Sup. Ct. Repr. 1098); Express Co. v. Caldwell, 88 U. S. 264; Telegraph Co. v. Dryburg, 35 Pa. 298.

The condition on the "telegraph sent" blank applies to the sender and not the sendee: Tel. Co. v. Richman, 19 W. N. C. 569; Tobin v. Tel. Co., 146 Pa. 375.

The measure of damages adopted by the court below was proper under the circumstances: Tel. Co. v. Wenger, 55 Pa. 262; Bowie v. Tel. Co., 59 S. E. Repr. 65; Tel. Co. v. Landis, 21 W. N. C. 38.

OPINION BY MR. JUSTICE MESTREZAT, March 28, 1910:

The plaintiffs are engaged in the dry goods commission business in the city of Philadelphia. They do not purchase the goods but sell to the trade and charge a commission on them. They are the exclusive selling agents for the Glenn-Lowry Manufacturing Company of Whitmire, South Carolina, manufacturers of dry goods. In reply to a telegram containing an offer for a certain quantity of goods, the Glenn-Lowry Manufacturing Company on March 20, 1906, deposited with the defendant company at Whitmire, South Carolina, the fol-

lowing telegram for transmission to the plaintiffs in Philadelphia: "Anxious that you sell summer deliveries of decade at chaplet." On the morning of March 21, 1906, the defendant company delivered to the plaintiffs, as the message deposited with it the evening before at Whitmire for transmission, the following telegram: "Anxious that you sell summer deliveries of decade at chapel." It will be observed that the word "chapel" in the message delivered to the plaintiffs in Philadelphia was erroneously substituted for the word "chaplet" in the message deposited for transmission. The blank on which the messages were written contained the usual stipulations limiting the company's liability for unrepeated messages. The telegram received by the plaintiffs was an unrepeated night message.

According to the plaintiffs' private code, "decade" meant certain goods manufactured at the mills of the Glenn-Lowry Manufacturing Company, the word "chapel" meant four and seven-eighth cents per yard, and "chaplet" five cents per yard.

Relying on the message, the plaintiffs, on the day it was received, sold to Garner & Company of New York, 30,000 pieces of the goods at four and seven-eighths cents a yard. The sales note provided that " if the production of the Glenn Mills shall be curtailed during the time above named by strikes, or lockouts to counteract strikes, or any unavoidable casualty, the deliveries shall only be proportionate to production." Immediately after the sale the plaintiffs wired the Glenn Mills to ship the goods. The error in the transmission of the telegram was then discovered. The Glenn-Lowry Manufacturing Company refused to deliver the goods which had been sold to Garner & Company at the price of four and seven-eighths cents per yard, and compelled the plaintiffs to pay five cents per yard for them. This resulted in a loss to the plaintiffs of $1,999, and to recover that sum the plaintiffs instituted this action. The learned court below held that the plaintiffs were entitled to recover, and that the measure of damages was the actual loss sustained by them by reason of the error in the transmission of the message. The defendant company has appealed.

The defendant contends (a) that it is not liable; because the message did not disclose the probable results of any negligence in transmission, and the plaintiffs are bound by the conditions printed on the telegraph blank and under which the message was sent; (b) that the plaintiffs did not suffer any loss, and that if they can recover, the damages can only be nominal and cannot exceed the price of the message sent.

The record raises two questions for consideration: (1) Can the plaintiffs, the addressees and receivers of a telegraphic message, recover under the facts of this case; and (2) if there can be a recovery, what is the proper measure of damages.

1. It is settled in this jurisdiction and by the great weight of authority in this country that a telegraph company is liable in tort to the addressee for injuries arising out of the negligent transmission of an intelligible message. A different rule prevails in England and possibly in some states of the Union. New York & Washington Printing Telegraph Co. v. Dryburg, 35 Pa. 298, was an action on the case brought by the recipient of a message against the telegraph company for the careless and erroneous transmission of a telegram. Between the receipt of the message and the time he learned of the error in transmission, the plaintiff acted on the information contained in the telegram and sustained a loss. He brought the action to recover damages for the loss resulting from the error in transmission. A judgment of the trial court against the telegraph company was sustained by this court. It was held that if a telegraph company negligently or willfully violates its duty of sending the very message prescribed, it is responsible in an action sounding in tort to the party to whom the erroneous message is addressed, and further, that even if the telegraph company be considered only as the agent of the sender of the message, it is liable to third persons, as a wrongdoer, for any misfeasance in the execution of the duties confided to it. In delivering the opinion, WOODWARD, J., said (p. 302): "The wrong, then, of which the plaintiff complains, consisted in sending him a different message from that which they had contracted with LeRoy to send. That it was a wrong is as certain as that it was their duty to transmit the message for

which they were paid. Though telegraph companies are not, like carriers, insurers for the safe delivery of what is entrusted to them, their obligations, as far as they reach, spring from the same sources,—the public nature of their employment, and the contract under which the particular duty is assumed. One of the plainest of their obligations is to transmit the very message prescribed. To follow copy, an imperative law of the printing office, is equally applicable to the telegraph office." This case was followed in Western Union Telegraph Co. v. Richman, 19 W. N. C. 569; Western Union Telegraph Co. v. Landis, 21 W. N. C. 38; Tobin v. Western Union Telegraph Co., 146 Pa. 375; Wolf Co. v. Western Union Telegraph Co., 24 Pa. Superior Ct. 129, and Harris v. Western Union Telegraph Co., 9 Phila. 88. In these cases the action was in tort and was brought by the recipient of the message to recover damages for errors in its transmission. Proof of the delivery of the erroneous or altered telegram in an action of tort establishes, prima facie, the negligence of the telegraph company, and casts upon it the burden of excusing itself, and of showing that the error was caused by some agency for which it is not liable: 2 Joyce on Electric Law, sec. 1046; Gray on Communication by Telegraph, sec. 77; Jones on Telegraph and Telephone Companies, sec. 36; United States Telegraph Co..v. Wenger, 55 Pa. 262.

The rule or notice of exemption from liability printed on the back of the blank on which the sender writes the message does not apply to the recipient of a message, and will not relieve the telegraph company from liability to him for errors in transmission: New York & Washington Printing Telegraph Co. v. Dryburg, 35 Pa. 298; Tobin v. Western Union Telegraph Co., 146 Pa. 375; Olympe De La Grange v. Southwestern Telegraph Co., 25 La. Ann. 383. The notice on the back of the blank was to the person who sent the message and not to the one who received it: Western Union Telegraph Co. v. Richman, 19 W. N. C. 569. If, however, the addressee is bound by the rules printed on the back of a message limiting the company's liability, it would not avail the company in an action brought against it in this state for the negligent transmission

of the message. In this and many other jurisdictions, a tele-
graph company may make reasonable rules affecting its re-
sponsibility, but it cannot stipulate for exemption from lia-
bility caused by its own negligence: Wolf v. Western Union
Telegraph Co., 62 Pa. 83; Passmore v. Western Union Tele-
graph Co., 78 Pa. 238; Southern Express Co. v. Caldwell, 88
U. S. 264; Pepper v. Telegraph Co. (Tenn.), 10 Am. St. Rep.
699; Gillis v. Western Union Telegraph Co. (Vt.), 15 Am. St.
Rep. 917; Brown v. Postal Telegraph Co. (N. C.), 32 Am.
St. Rep. 793; Stamey v. Western Union Telegraph Co. (Ga.),
44 Am. St. Rep. 95; Western Union Telegraph Co. v. Linn
(Tex.), 47 Am. St. Rep. 58; Reed v. Western Union Tele-
graph Co. (Mo.), 58 Am. St. Rep. 609; Western Union Tele-
graph Co. v. Eubanks (Ky.), 66 Am. St. Rep. 361.

While, as we have seen, our own cases hold that in an action
by an addressee to recover damages for loss sustained by the
erroneous transmission of a message, he is not bound by stipu-
lations on the back of the message restricting liability of the
telegraph company for mistakes in unrepeated messages, the
learned counsel for the appellant cite and rely on Coit v. West-
ern Union Telegraph Co., 130 Cal. 657; 53 L. R. A. 678, and
Halsted v. The Postal Telegraph Cable Co., 193 N. Y. 293; 19
L. R. A. (N. S.) 1021, as announcing a different doctrine.
Both of these cases were ruled on the ground that the sender
was the agent, specially authorized by the addressee, to send
the message, and hence was bound by the contract made by
the sender with the telegraph company. In the Coit case, it is
said in the opinion: "Plaintiffs telegraphed to Dennis, in St.
Louis, requesting him to send by telegram the price of 220
tons of steels rails. In pursuance of that request, Dennis
telegraphed the desired information. It is thus plain that
Dennis performed service for plaintiffs at their request. And,
that being so, we deem the conclusion irresistible that, in the
performance of the service, Dennis was acting for plaintiffs,
and was their agent. . . . Dennis, in sending the message,
being the agent of plaintiffs, they were bound by the contract
made with the defendant. Plaintiffs, by requesting him to
send the message, necessarily authorized him to contract with

defendant as to how that message should be sent . . . . and therefore the agreement was binding upon the principal, these plaintiffs." The case of New York & Washington Printing Telegraph Co. v. Dryburg, 35 Pa. 298, is distinguished on the ground that "no question of agency appears to have been involved, and it is upon the contract made by Dennis with the defendant, and the privity of contract existing between Dennis and plaintiffs that we plant our conclusion upon this branch of the case." In the Halsted case, the opinion says: "It was alleged in this complaint that the plaintiffs requested the Cannon Manufacturing Company . . . . to send them by wire the prices for the goods and was shown to be the fact by the evidence of the plaintiffs. The Cannon Manufacturing Company, therefore, in transmitting the information requested by means of the telegraph, was made the agent of the plaintiffs for that purpose. . . . It is our judgment that, where the receiver of a message has, by special request, procured it to be sent by the telegraph, he becomes bound by any reasonable contract made by the sender with the telegraph company for its transmission, and is limited in his claim for any damages for a loss occasioned by error or mistake in transmission, where the stipulations for the repetition or for the insurance of the message had not been availed of, to the amount stipulated in the contract."

So far as the evidence discloses in the case at bar, the plaintiffs did not, as in the California and New York cases, request the Glenn-Lowry company to wire them the prices of the goods. They telegraphed the company an offer for the goods without requesting a reply. Acting for itself and not as the agent of the plaintiffs, the Glenn-Lowry company wired the prices at which it would furnish the goods.

2. When the sender is injured by a mistake in the transmission of a telegram which indicates the character and purport as well as the importance and urgency of the message, the damages recoverable are such as may fairly and reasonably be considered as arising naturally from a breach of it, or may reasonably be supposed to have been in contemplation of the parties at the time of making the contract as the probable

result of a breach of it. This is the rule announced in Hadley v. Baxendale, 9 Exch. 341, for ascertaining damages for a breached contract, and the English and many American decisions have applied it in actions for the negligent transmission and delivery of telegraphic messages. We recognized the rule in Ferguson v. Anglo-American Telegraph Co., 178 Pa. 377, which was an action by the sender against the telegraph company for delay in delivering a cipher or unintelligible message. In the opinion in that case it is said (p. 384): "To subject the company to the same liability for mistake or delay in the transmission of such (unintelligible) a message that it might be subject to for a like mistake or delay in the transmission of an intelligible message would open the door to the perpetration of fraud, and disregard the well-settled rule of Hadley v. Baxendale, 9 Exch. 341." The cases of the United States Telegraph Co. v. Wenger, 55 Pa. 262, and Western Union Telegraph Co. v. Landis, 21 W. N. C. 38, were distinguished on the ground that the messages in those cases disclosed the nature of the business to which they related. There was no intention in the Ferguson or any later case to change or modify the doctrine of those cases.

In actions of tort brought by the addressee for the erroneous transmission of an intelligible message, the plaintiff is entitled, under our own cases, to recover the actual damages he has sustained. New York & Washington Printing Telegraph Co. v. Dryburg, 35 Pa. 298; Western Union Telegraph Co. v. Richman, 19 W. N. C. 569. The contention of the defendant company is that the message involved in this case was in cipher and unintelligible except to the sender and sendees, and hence the doctrine of these cases does not apply. We are not convinced of the correctness of this position. We think the message sent to the plaintiffs disclosed on its face that it related to a business transaction of importance which required immediate attention by the sendees. It was addressed to a well-known business firm of the city of Philadelphia and was signed by the Glenn-Lowry Manufacturing Company. It was dated March 20, 1906, and reads: "Anxious that you sell summer deliveries of decade at chaplet." There were but two

code words in the dispatch and, apart from these, the language is plain and intelligible. It was sent by a manufacturing company and manifestly referred to a commercial transaction. It in terms shows anxiety on the part of the sender that the firm to which it is addressed shall sell something. It will be assumed from the intelligible language employed that some articles of merchandise manufactured by the company were to be sold by the sendees for delivery during the approaching summer. It implied action by the sendees at an early date. The message was sent March 20, and delivered the following day, less than a month and a half before the beginning of summer when the deliveries of the articles sold were to be made. Hence, the necessity for prompt action on the part of the sendees. The only words of the telegram in cipher are the name and price of the article to be sold. These are some of the details of the proposed business transaction, and while important to the parties it was not absolutely necessary that they should be known by the defendant's operator to inform him of the general character and importance of the transaction. A message need not disclose on its face the nature of the business, so that its meaning as to quantity, quality or value may be disclosed to the operator; if it shows that it relates to a commercial or legal transaction of value it is sufficient: Postal Tel. Cable Co. v. Lathrop (Ill.), 19 Am. St. Rep. 55; Pepper v. Western Union Telegraph Co. (Tenn.), 10 Am. St. Rep. 699. The fact that a telegraphic message is sent and received by parties evidently engaged in business operations and that part of it is in cipher should be notice to the operator that it relates to business matters of importance to the parties, and some of which matters they wish to conceal from the general public and about which they wish to communicate without delay. It is, therefore, sufficient notice to a telegraph company if the message shows on its face that it relates to a commercial transaction of importance without giving the details of the transaction. This is substantially the rule announced in the many cases on the subject and stated in the standard text-books. In 2 Joyce on Electric Law, sec. 952, it is said: "The rule (requiring the message to indicate its importance) is not to be

construed as meaning that all the details in reference to a transaction referred to in a dispatch and which are known to the parties themselves, need be disclosed to the company to render it liable for more than nominal damages." In Jones on Telegraph and Telephone Companies, sec. 535, the author says: "Although a message may be couched in unusual, or trade language, if it is sufficiently plain to indicate that it relates to a business transaction of much importance, and that loss will probably result unless it is promptly transmitted and delivered, recovery will not be limited to nominal damages."

The language of the message in Western Union Telegraph Co. v. Landis, 21 W. N. C. 38, is much less intelligible and disclosed less urgency than the language of the message in the present case, yet we held it sufficiently plain on its face to justify a verdict and judgment for the actual loss sustained by the addressee by reason of error in its transmission. The message as deposited with the telegraph company at the stock yards in Pittsburg in that case reads: "One cost six half two wooled Texas five sixty take all off evening." In course of transmission to the abattoir, West Philadelphia, its destination "sixty" was changed to "six." In the opinion of the court it is said: "There was enough upon its face to indicate to the operator that it referred to sheep to be shipped to Philadelphia, and the price."

In Ferguson v. Telegraph Co., 178 Pa. 377, a code name was used for the sendee and there was nothing in the message to indicate the meaning of its contents. The three intelligible words gave no indication of the character or importance of the transaction to which it related. For all purposes of information to the operator, therefore, it might as well have been entirely in cipher.

It is true, as contended by the defendant company, that it was the duty of the plaintiffs to minimize the damages which they had sustained by the negligent conduct of the company. It is equally true, however, that the plaintiffs were required to observe their contract with Garner & Company and deliver the goods they had sold them on the faith of the erroneous telegram. While the goods sold to Garner & Company were

standard goods and were similar to goods to be had in the market, the plaintiffs' contract, as evidenced by the sales note, obliged them to deliver goods manufactured by the Glenn-Lowry Manufacturing Company at its Glenn Mills. This, we think, is clearly the proper interpretation of that note. The provision that the deliveries should be proportionate to the production of the Glenn Mills during a strike or lockout manifestly indicates that the goods sold by the plaintiffs to Garner & Company were the product of the Glenn Mills. Any other construction of this clause of the sales note renders it meaningless and, therefore, such construction is not permissible. There is no evidence in the case that the market price of the Glenn Mills goods was less than five cents per yard, the price the plaintiffs were required to pay the Glenn-Lowry Manufacturing Company for the goods sold to Garner & Company.

If the plaintiffs had been advised of the error in transmitting the telegram before they acted upon it and sold the goods to Garner & Company, they would not be in a position to assert their claim against the defendant. The sale, however, was made prior to the discovery of the mistake in the message and relying on its correctness. The goods sold, as we hold, were the product of the Glenn Mills, owned and operated by the Glenn-Lowry Manufacturing Company. The uncontradicted evidence is that the plaintiffs paid five cents per yard for the goods, and had sold and were required to deliver them to Garner & Company at four and seven-eighths cents per yard, thereby losing one-eighth of a cent per yard on the quantity sold. It is contended, however, by the defendant that the plaintiff received a commission from the manufacturing company of four per cent on the gross selling price of the goods and that the commission amounted to more than one-eighth per cent per yard and, therefore, the plaintiffs sustained no loss. We agree with the learned trial judge that the defendant company cannot defalk, as it were, the plaintiffs' commissions against the plaintiffs' loss on the sale. The plaintiffs are the exclusive selling agents and bankers of the Glenn-Lowry Manufacturing Company, and receive a fixed commission of

four per cent on all sales of a certain grade of the company's product. They guarantee to the manufacturing company payment of the price of the company's goods sold by them. They were entitled to their commission of four per cent on five cents per yard of the goods purchased from the manufacturing company and sold to Garner & Company. Had the mistake not occurred in the message the plaintiffs would not have sold the goods for less than five cents per yard, and hence would not have lost their commission of four per cent. The negligent act of the defendant company caused this loss and it must compensate the plaintiff for the injury done. The commission was compensation for services rendered and liabilities assumed and was the property of the plaintiffs for the loss of which they were entitled to be paid. It was not profit in the correct sense of the term, but if it was, it results from the contract with the manufacturing company, and for its loss, caused by the negligence of the defendant company, the latter is responsible. The recent case of Bowie v. Western Union Telegraph Co., 78 S. C. 424, is very similar to the one in hand. In speaking of the right to recover loss of profits in cases of this character, the opinion says (p. 428): "This test of the measure of damages is not affected by the fact that part of the difference between the contract price and the market price would be profit. The parties are entitled to all the legitimate benefits of the contract, including profits. This general rule is applicable to damages for mistakes in communicating contracts by telegraph, and it was the basis of the decision in Hays v. Telegraph Co., 70 S. C. 16."

The view we take of this case relieves us from the necessity of determining the proper measure of damages in an action brought by the sendee against a telegraph company for mistakes in transmitting a cipher or unintelligible message.

The judgment is affirmed.