## DeRose v. Commercial Credit Company

*E. K. Twining*, for plaintiff.

*O. J. Tallman*, for defendant.

IOBST, P. J., June 17, 1940.—Plaintiff instituted his action in trespass alleging negligence on the part of defendant, Commercial Credit Company. In his pleadings

plaintiff alleges that he had loaned a sum of money to one Gold; that on October 21, 1937, plaintiff and Gold entered into a lease by the terms of which plaintiff leased to Gold certain automobiles therein mentioned; that on January 10, 1938, Gold desired his loan extended, which by that time had been reduced to $2,279.50; that Gold had in his possession three certain automobiles specifically mentioned and requested plaintiff to execute a new bailment lease as further security; plaintiff and his counsel both on January 10, 1938, called the office of defendant credit company at Allentown, Pa., from their respective places of business at Easton, Pa., inquiring whether or not defendant had liens or encumbrances against the three certain automobiles. Plaintiff alleges that one Hanlon, an employe of defendant company at its Allentown office, advised as to two of the automobiles there were no obligations, and, as to the third, the said employe would check with the office in Philadelphia and advise plaintiff on the next day; that no such advice was given; defendant had purchased said automobiles and had leased them to Gold; in reliance upon defendant's employe's telephonic conversation, plaintiff canceled his lease of October 21, 1937, which had covered other automobiles and executed a lease with Gold on January 10, 1938, for the three automobiles owned by defendant and previously leased by it to Gold; that defendant, under its lease, later took into its possession the three automobiles covered by its leases. Plaintiff alleges that defendant was negligent in giving the information requested and that plaintiff was damaged to the amount of the balance owing at the time of suit on Gold's debt to him. No fraud is alleged. Defendant filed no affidavit of defense. The case came on for trial and upon motion of defendant's counsel a compulsory nonsuit was entered at the close of plaintiff's case. The matter is now before us on plaintiff's motion to take off the nonsuit. In determining the legal propositions before us, we are obliged to consider the testimony and all

the fair inferences from the proven facts in a light most favorable to plaintiff.

It appears that the money transactions between plaintiff and Gold commenced sometime in August 1937 when DeRose loaned Gold $4,845, secured by a bailment lease covering eight automobiles, four new DeSoto and four new Plymouth cars. On October 21, 1937, this indebtedness was reduced to $3,306 and Gold requested plaintiff to enter into a new lease with its subject matter four automobiles therein referred to. Thereupon plaintiff and Gold entered into a lease in which plaintiff was the lessor and Gold the lessee. On January 10, 1938, the debt of Gold to DeRose was reduced to $2,279.50 and Gold again requested a change of automobiles involved. Plaintiff treated the automobiles as "security" for his loan. There were three automobiles in Gold's garage, being the three automobiles involved in this action. DeRose, the plaintiff, after discussing the matter with Gold, called the Allentown office of defendant company and had a conversation with one Hanlon, the manager of that office. Plaintiff gave Hanlon the numbers of the cars and asked, "Can you tell me, please, if you have any liens against these automobiles?" Hanlon answered, "On 5621011 and 562-1017, there has been no transaction through our office, and we have no liens against these two automobiles; we also have no liens against no. 5608534, but I will call our Philadelphia office tomorrow and check up on that particular automobile". Hanlon, plaintiff testified, further said: "You call me tomorrow around eleven o'clock, or a little bit after eleven o'clock." Plaintiff then went to the office of his attorney, Robert S. Bachman, concerning the matter and Mr. Bachman called Hanlon by telephone. He, Bachman, directed his client, DeRose, to listen in on the conversation at an extension telephone. As to this conversation, plaintiff testified, "and Mr. Hanlon then told Mr. Bachman that on two cars he had no knowledge of any liens against those two cars, and he also knew there was no lien against the third car, but he would call up the

Philadelphia office and make sure if there were any liens against the third car". Plaintiff testified that his attorney then advised Hanlon that DeRose would act on the statement made by Hanlon. Mr. Bachman testified, in substance, in line with the testimony of plaintiff, also stating to Hanlon that he, Bachman, would hold the three titles, the title applications, and was going to hold both leases and added, "if you call me and tell me before eleven o'clock tomorrow morning that there is any claim that your company has against this third automobile, then I'm not going to have this deal go through. If, on the other hand, I receive no call from you, then I am going to return the lease of October 21st to Mr. Gold and give the new lease to DeRose, and send in the title applications and complete the deal on the extension of the credit on the three new automobiles". Gold and plaintiff, however, signed the lease in Mr. Bachman's office that same day. The following day, Mr. Bachman, not hearing from Mr. Hanlon, forwarded the applications for titles to Harrisburg. It appears that both Gold and DeRose were clients of Mr. Bachman. The automobiles at no time were in the possession of plaintiff. They were on the floor of Gold's garage where they remained until repossessed by defendant credit company. This case is rather unusual.

There are comparatively few cases in point in this Commonwealth and the position of plaintiff is an effort to carry the established rules of law to a new front. Plaintiff's action is not based on fraud and deceit, but upon negligence. Recovery in such cases has been carefully restricted. There has never been any doubt under the Pennsylvania decisions that one whose business it is to supply information is liable if he supplies it negligently, if he knows that the information he gives will be acted upon. Thus, a recorder of deeds has been held liable for a false certificate of search: Houseman v. Girard Mutual B. & L. Assn., 81 Pa. 256; telegraph companies have been held liable for erroneously transmitting business messages, if harm results: Bailey & Co. v. Western Union Tel. Co.,

227 Pa. 522. There are other cases in which defendant is not engaged in a business concerning itself with giving information. In such cases the courts have said that defendant must owe a duty to plaintiff before plaintiff may be entitled to recover in an action based on negligence and that such duty must be owing by defendant to plaintiff arising out of relations between the parties by contract, by statute, or at common law: Landell v. Lybrand et al., 264 Pa. 406; Tredway v. Ingram, 102 Pa. Superior Ct. 459. In Landell v. Lybrand et al., supra, plaintiff alleged that defendants, certified public accountants, had given false information in a report as to the assets and liabilities of a certain company; and that, in reliance upon the report defendants made, he, the plaintiff, had bought shares in the company to his damage. The court held the statement of claim insufficient and affirmed a judgment for defendants. At page 408, the Supreme Court, in a per curiam opinion, said:

"There were no contractual relations between the plaintiff and defendants, and, if there is any liability from them to him, it must arise out of some breach of duty, for there is no averment that they made the report with intent to deceive him. The averment in the statement of claim is that the defendants were careless and negligent in making their report; but the plaintiff was a stranger to them and to it, and, as no duty rested upon them to him, they cannot be guilty of any negligence of which he can complain: Schiffer v. Sauer Company et al., 238 Pa. 550. This was the correct view of the court below, and the judgment is accordingly affirmed."

In Tredway v. Ingram, supra, defendant, a lumber dealer, executed a release of a mechanic's lien upon certain houses for which he was supplying lumber. A mortgagee relied upon this release as to a property for which defendant was not supplying lumber. The mortgagee sued alleging a liability for negligence. The court directed a verdict for defendant and judgment thereon. The judg-

ment was affirmed. At page 463, the court by Drew, J., said:

"No duty of any kind has been shown to exist in the present case between plaintiff and defendant. There was no contractual obligation whatsoever. There is no statute in any way dealing with the subject. Defendant did not know plaintiff, knew nothing of plaintiff's mortgage and had no relationship whatsoever with her. Defendant owed no duty to plaintiff, and in such case, under the principle set forth above, plaintiff cannot recover for the negligent act of defendant."

A more recent case on the subject is Renn et al. v. Provident Trust Co. of Phila., 328 Pa. 481. There the Supreme Court, at page 483, said:

"We agree with the court below that these allegations are insufficient to impose a liability on defendant. Recovery for incorrect information negligently furnished has been carefully restricted, where, indeed, it is allowed at all (cf. *Derry v. Peek*, L. R. 14 A. C. 337). 'Not every casual response, not every idle word, however damaging the result, gives rise to a cause of action. . . . Liability in such cases arises only where there is a duty, if one speaks at all, to give the correct information': *International Product Co. v. Erie R. R. Co.*, 244 N. Y. 331, 337. Accordingly we have held that when it is one's business and function to supply information he is liable, if, knowing that action will be influenced, he supplies it negligently: *Houseman v. Girard Mutual B. & L. Assn.*, 81 Pa. 256; *McCaraher v. Commonwealth*, 5 W. & S. 21; cf. *Bailey & Co. v. Western Union Tel. Co.*, 227 Pa. 522; see Tentative Draft No. 13, Restatement of Torts, section. 628. If, on the other hand, the nature and extent of the transactions that will be regulated by the information is not known, no such liability exists: *Landell v. Lybrand*, 264 Pa. 406; *Tredway v. Ingram*, 102 Pa. Superior Ct. 459.

"Plaintiffs' statement of claim is deficient in two particulars. It does not allege that defendant knew the object

of the request for the copy, or that it was part of its business to furnish it. . . . Plaintiffs have not made out a case for recovery under the established principles we have discussed; to hold the defendant liable on account of a mistake made by one of its subordinate officers performing only an act of courtesy, would be unfair and without legal justification."

There can be no doubt that the judgment of the court is based upon the fact that defendant was not in the business of giving information. This rule is recognized in the A. L. I. Restatement of Torts (Tent. Draft no. 13, 1936) §628. If it be established that the business of defendant is to supply information, then the next inquiry must be as to whether defendant is aware of the purpose and object of the inquiry.

Defendant is in the finance business and there is nothing in the testimony indicating that the supplying of information to others concerning its customers is part of that business. On the contrary it is fair to assume that the very nature of the business, like the business of a bank, would indicate keeping confidential the business of the customers of a company so engaged. The fact that information was given here by a subordinate officer or in other isolated instances or to other finance companies would not be sufficient to establish a course of business or a business custom. There certainly was no obligation on defendant company to call Mr. Bachman on the following day concerning the one automobile referred to in the testimony. Mr. Bachman, as attorney for plaintiff, chose to act without full information and his action in the premises cannot fasten negligence on the defendant.

For the reasons above stated, under the law and the evidence in this case, the compulsory nonsuit was properly entered.

### Decree of court

Now, June 17, 1940, plaintiff's rule to show cause why the nonsuit entered in the above case should not be set aside is discharged.