SHERRERD, Appellant, vs. WESTERN UNION TELEGRAPH COMPANY, Respondent.

*[April 7—May 2, 1911.*

*Telegraph companies: Agency for sender of message: Mistake in transmission: Liability: Purchase of excessive amount of stock: Efforts to minimize loss: Waiver of damages.*

1. A telegraph company is the agent of the sender of a message, and he is bound by the terms of the message as delivered.
2. Where plaintiff's brokers bought stock pursuant to his telegram as erroneously transmitted to them by the defendant telegraph company, so that the title to the stock vested in him without further act and without power on his part to disaffirm the purchase, this fixed the liability of the telegraph company to plaintiff for the damages proximately resulting from the neglect in transmitting the message.
3. Where, through such fault of the defendant, plaintiff became the owner of a greater amount of stock than he intended to buy, he did not waive his claim for damages by efforts to sell the excess, if in making such efforts he acted promptly and with ordinary prudence, for the purpose of minimizing the apprehended loss and thus reducing the damages.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Reversed.*

At 9:25 a. m. on June 7, 1909, the plaintiff delivered to the defendant at its branch office in the Plankinton Hotel, Milwaukee, the following telegram:

"Henry Bros. & Co.,
        "71 Broadway, New York.
"Buy one hundred Corn Products at market, also one hundred Car & Foundry if it drops to fifty six.
                        "M. R. SHERRERD."

Plaintiff paid sixty-seven cents as the fee for the transmission of the message. When the message was delivered at New York at 10:55 (9:55 Milwaukee time) the word "hundred," the third word in the message, had erroneously been changed to "thousand."

At 11:50 a. m. there was delivered to *Mr. Sherrerd* at Milwaukee a message signed by Henry Bros. & Co. and reading as follows:

"Bought thousand corn twenty-five seven eighths—do you want to put stop order in—have made arrangements with Paine ,Webber of Milwaukee—you can trade through them and give us up."

At 12:48 p. m. the plaintiff delivered to the defendant for transmission to Henry Bros. & Co. the following telegram:

"My order was for one hundred Corn Products. Your telegram said bought one thousand, therefore sell eight hundred if you can get profit. Put stop at twenty-five on one thousand if you bought that amount and cannot sell at profit. If you are holding one hundred or two hundred put stop at twenty-three. Wire situation. I will await reply before trading with local house."

Upon receipt of the message from Henry Bros. & Co., stating that they had bought 1,000 shares of stock instead of the 100 he ordered, the plaintiff requested the manager of Paine Webber & Co. to ask over their private wire from Henry Bros. & Co. whether they had actually bought 1,000 shares, and whether they had gotten his message to them over the private wire. The following message was handed to the plaintiff as the answer to his inquiries: "Bot 1000 Corn Products 25c. Recd message over public wire O. K."

Upon the receipt of this message the plaintiff requested the manager of Paine Webber & Co. to tell Henry Bros. & Co. over their private wire to put a stop order on the 1,000 shares of Corn Products at twenty-five.

At 3:51 p. m. at Milwaukee there was delivered to the plaintiff the following message from Henry Bros. & Co.:

"Your telegram as received read buy one thousand at market—unable to sell eight at profit today—have put in stop order on thousand at twenty-five—will sell tomorrow if possible eight to get out even and reduce stop on balance to twenty-three."

Henry Bros. & Co. paid $25⅞ per share for the stock bought on the order signed *M. R. Sherrerd,* and with their commission of one eighth per cent. the total cost of the stock to the account of *M. R. Sherrerd* was $26,000.    Henry Bros. & Co. wrote *Sherrerd* as follows with reference to the disposition made of the stock:

"We had already sold five hundred shares at 25, when we received your instructions through Messrs. Logan and Bryan, the New York correspondents of Messrs. Paine Webber & Co., to reduce your stop to 24¾.    There were no sales of Corn Products between 25 and 24¼, and we didn't sell our stock until after sales had been made by others, at 24¼."

The evidence shows sales of "Corn Products" on June 7, 8, and 9 and the prices, which ranged from 25⅞ to 24⅛.    The state of the market was unfavorable for sales in lots of more than 400 shares, and an offer of the lot of 1,000 shares would have caused a falling market.

Plaintiff brings this action to recover $1,500, the amount of his loss because of the error in his telegram ordering the purchase.    On the trial he testified that he was in mental distress at the mistake, and that his orders to resell were given with the intent and purpose to reduce the loss as much as possible, in the case of a falling market.

This is an appeal from the judgment of nonsuit.

For the appellant there was a brief by *Quarles, Spence & Quarles,* and oral argument by *A. C. Fish.*    They argued, among other things, that dealing with the stock as though it were his own could not confirm plaintiff's title in it because it already was his own and he had no option to accept or refuse title.    *Chaffe v. Barataria C. Co.* 113 La. 215, 228, 229; *Daughtery v. Am. U. Tel. Co.* 75 Ala. 168; *Second Nat. Bank v. Larson,* 80 Wis. 469, 473; *D. M. Osborne & Co. v. Rider,* 62 Wis. 235.    The only effect of a sale would be to liquidate the damages.    This the plaintiff was not bound to do, but might if he chose.    *Rittenhouse v. Ind. Line of Tel.* 44 N. Y.

263, 266; *W. U. Tel. Co. v. Chamblee,* 122 Ala. 428; *Squire v. W. U. Tel. Co.* 98 Mass. 232, 235, 238; *Evans v. W. U. Tel. Co.* 102 Iowa, 219, 71 N. W. 219; *True v. International Tel. Co.* 60 Me. 9.

For the respondent there was a brief by *Miller, Mack & Fairchild,* attorneys, and *George H. Fearons,* of counsel, and oral argument by *E. S. Mack.* They contended, *inter alia,* that by speculating with the property which he had acquired through the unauthorized act of this respondent, his agent, the plaintiff assumed the responsibility for the transaction which was the result of the agency, with all of its advantages and all of its burdens. Mechem, Agency, §§ 170, 171, 181; Story, Agency, § 252 (see p. 252); *Freeman v. Swelt,* 11 Me. 79; *Whitehead v. Lynn,* 20 Colo. App. 51, 76 Pac. 1119, 1120; *Wilson v. Dame,* 58 N. H. 392; *Austin v. Burroughs,* 62 Mich. 181, 185; *Owings v. Hull,* 9 Pet. 607; *Wright v. Burbank,* 64 Pa. St. 247, 251. Such adoption of the message as delivered had a retroactive effect and was equivalent to a prior authorization. *Saveland v. Green,* 40 Wis. 431; Mechem, Agency, § 167.

SIEBECKER, J. There is no dispute but that the defendant is the agent of the plaintiff, the sender of the message. *Saveland v. Green,* 40 Wis. 431. Under the circumstances the purchase by the plaintiff's brokers of the 1,000 shares of the specified stock, pursuant to the telegram delivered to plaintiff's brokers, vested the title thereof in the plaintiff and made him the owner. No question of ratification of the purchase could arise as between the plaintiff and his brokers. The brokers acted within the authority of their agency for the plaintiff in purchasing the stock for him, and executed the authority which the defendant had undertaken to transmit for the plaintiff. The stock purchased under plaintiff's authority, pursuant to the terms of the defendant's telegram, therefore became plaintiff's property without any further action on

his part, nor was he so circumstanced that he could disaffirm the transaction as between himself and the seller. This fixes the relation between the plaintiff and the defendant respecting the transaction and established the ground of liability of the defendant to plaintiff for damages proximately resulting from the defendant's neglect in transmitting the message.

The question then is, What damages, if any, did the plaintiff suffer as the proximate result of the defendant's neglect? There is no dispute but that the actual loss to the plaintiff in the transaction was $1,500. It is averred that the trial court correctly nonsuited the plaintiff because the evidence conclusively establishes that the plaintiff waived all claim for damages against the defendant by dealing with the 900 shares for his personal profit. We do not so regard the evidence. A jury might well infer that the plaintiff took the steps he did for the purpose of minimizing the loss on the purchase induced through defendant's fault and thus sought to reduce the damages as much as the circumstances of the situation would permit. The facts do not permit of a conclusive inference that the plaintiff failed to act promptly and providently in disposing of the stock, or that he failed to act with ordinary prudence in directing his brokers to resell it to prevent loss additional to that which he then apprehended might result from the purchase of this excess of stock through defendant's fault. In the light of such permissible inferences it was error to take the case from the jury upon defendant's request for a nonsuit. Upon the evidence adduced the case should have been submitted for determination to the jury.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial.