## WESTERN UNION TELEGRAPH CO. v. COWIN & CO.

Circuit Court of Appeals, Eighth Circuit.
May 17, 1927.

No. 7584.

**1. Telegraphs and telephones ⬤⟹56(1)—Telegraph company is "independent contractor," liable to both sender and receiver for damages proximately resulting from erroneous transmission.**

Since telegraph company is a common carrier of intelligence for hire, relation between sender of telegram and company is not that of principal and agent, but that of employer and "independent contractor," and, if company delivers message containing an offer in terms different from message filed, sender is not bound by the offer as expressed in erroneous message delivered, and company is liable in tort for breach of its contractual duty to both sender and receiver for damages proximately resulting from its error.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Independent Contractor.]

**2. Telegraphs and telephones ⬤⟹56(2)—Sender's contract for amount less than bid as filed for telegraphic transmission held voluntary, not justifying damages for erroneous transmission.**

Where telegraph company, in transmitting materialman's bid to furnish steel to be used in construction of building, erroneously stated bid at a lower amount than stated to it by sender over telephone, sender was not bound by erroneous message, and sender's subsequent contract to furnish steel at a lower price than its actual bid because of such error was voluntary act, and did not authorize recovery of substantial damages, measured by difference between actual bid and erroneous bid.

In Error to the District Court of the United States for the District of Minnesota; William A. Cant, Judge.

Action by Cowin & Co. against Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions.

Charles Burke Elliott, of Minneapolis, Minn. (N. M. Coursolle, of Minneapolis, Minn., and Francis R. Stark, of New York City, on the brief), for plaintiff in error.

Herbert T. Park, of Minneapolis, Minn., for defendant in error.

Before LEWIS and BOOTH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. Cowin & Co. brought this action against the Western Union Telegraph Company to recover for damages alleged to have been sustained as a result of an error in the transmission of a telegram.

The Pfeffer Construction Company was about to submit a bid, as the principal contractor, for the construction of a school building at Duluth, Minn. Cowin & Co., desiring to bid as a subcontractor for the furnishing of the steel to be used in such building, on February 23, 1925, telephoned the following message to the Minneapolis office of the Telegraph Company for transmission to the Construction Company at Duluth, Minn.:

"Feb. 23, 1925.

"Our price reinforcing bars Denfeld twenty-nine thousand one hundred dollars for A sixty-seven hundred thirty dollars for B and ten hundred fifty dollars for C including spacers.    Cowin & Co., Inc."

The telegram, as delivered to the Construction Company, at Duluth read:

"Our price reinforcing bars Denfeld twenty five thousand one hundred for A. * * *"

The Construction Company, using the Cowin & Co. bid in estimating its bid for the entire contract, submitted a bid on February 24, 1925, and was awarded the contract on that day. The Construction Company had no knowledge of the error in the telegram until about 2 o'clock February 25th, when it received through the mail from Cowin & Co. a written confirmation. Later a contract was entered into between Cowin & Co. and the Construction Company by which the former agreed to furnish the steel for $25,600.

A written stipulation duly waiving trial by jury was filed and the cause came on for trial before the court. The court found that the actual cost to Cowin & Co. of carrying out the contract with the Construction Company was $27,609.46, and that Cowin & Co. was entitled to recover the difference between the contract price and that amount, or $2,009.46. Judgment was entered accordingly and the Telegraph Company has sued out a writ of error therefrom.

Counsel for the Telegraph Company contend that such company was an independent principal and not the agent of Cowin & Co., and therefore that Cowin & Co. was not bound by the terms of the erroneous telegram delivered to the Construction Company.

There is an irreconcilable conflict in the authorities as to the liability of the sender in case of mistake in the transmission of an offer or acceptance by telegram. The English and Canadian cases hold that the Telegraph Company is a special agent of limited authority; that it is only authorized to transmit the message in the terms in which such message is delivered to it by the sender; and that in the event of erroneous transmis-

sion of an offer the sender is not bound by the message delivered. Henkel v. Pape, L. R. 6 Exch. 7; Flynn v. Kelly, 12 Ont. L. R. 440; Lord Halsbury's Laws of England, vol. 27, p. 394.

In Henkel v. Pape, supra, the court said:

"The question is whether the defendant has entered into a contract to purchase fifty rifles, and there is no· doubt he might have bound himself either by letter or telegraphic message, but the post office authorities are only agents to transmit messages in the terms in which the sender delivers them. They have no authority to do more. Now in this case the evidence is that the defendant agreed to take three rifles and three only, and he authorized the clerk to send a message to that, and to no other, effect. That being so, there was no contract between the plaintiffs and the defendant for the purchase of fifty rifles. The defendant cannot be made responsible because the telegraph clerk made a mistake in the transmission of the message. There was no contract between the parties such as the plaintiff relies on."

The early decisions in this country held that the telegraph company was the agent of the sender, and that the sender was bound by the terms of the telegram actually delivered. But the trend of the more recent cases is toward the adoption of the English rule.

The first American case squarely laying down the rule that the telegraph company is the agent of the sender, and that the sender is bound by the terms of the message delivered, is Western Union Telegraph Co. v. Shotter, 71 Ga. 760, decided in 1883. In passing on the question, the court said:

"5. But the plaintiff in error raises the question that the defendant in error, plaintiff below, was not obliged to let the turpentine go at that price; that he was not bound by the mistake of the telegraph operators, and voluntarily let the turpentine go too low. Whether the telegraphic operator be the agent of the sender of a dispatch, so as to bind him, is a debatable question in the courts, the English authorities being to the effect that he is not; and the American mainly that he is. We agree with the American doctrine, at least to the extent that commercial transactions being now conducted to so great an extent through the telegraph, a merchant would lose business and credit if he did not settle in accordance with the offer actually made, though by mistake of the agency he used to convey it, and when he does so settle in good faith, and is induced to do so by the negligence of the telegraphic company, through its servants, *that company*

*should respond to him in damages, whether absolutely bound by his contract or not.*" (Italics ours)

The next American case is Ayer v. Western Union Telegraph Co., 79 Me. 493, 10 A. 495, 1 Am. St. Rep. 353, decided in 1887. In passing on the question, the court, in the latter case, said:

"This raises the question whether the message written by the sender, and intrusted to the telegraph company for transmission, or the message written out and delivered by the company to the receiver at the other end of the line, as and for the message intended to be sent, is the better evidence of the rights of the receiver against the sender. The question is important and not easy of solution. It would be hard that the negligence of the telegraph company, or an error in transmission resulting from uncontrollable causes, should impose upon the innocent sender of a message a liability he never authorized nor contemplated. It would be equally hard that the innocent receiver, acting in good faith upon the message as received by him, should through such error lose all claim upon the sender. If one, owning merchandise, write a message offering to sell at a certain price, it would seem unjust that the telegraph company could bind him to sell at a less price, by making that error in the transmission. On the other hand, the receiver of the offer may in good faith, upon the strength of the telegram as received by him, have sold all the merchandise to arrive, perhaps at the same rate. It would seem unjust that he should have no claim for the merchandise. If an agent receives instructions by telegraph from his principal, and in good faith acts upon them as expressed in the message delivered him by the company, it would seem he ought to be held justified, though there were an error in the transmission."

It will be noted that neither of these opinions predicates the conclusion reached upon any definite principle of law.

In Des Arc Oil Mill v. Western Union Telegraph Co., 132 Ark. 335, 201 S. W. 273, 6 A. L. R. 1081, decided in 1918, the Supreme Court of Arkansas adopted the rule announced in Ayer v. Telegraph Co. and Telegraph Co. v. Shotter, supra. In the opinion the court said:

"The authorities announce the rule that 'a party making an offer by telegraph is responsible for the correct transmission of his message and is bound by it in the terms in which it is delivered to the party addressed.' This is on the theory that the carrier of the message is the agent of the sender."

In Hulme v. Levis-Zuloski Mercantile Co., 149 S. W. 781, the Texas Court of Civil Appeals held, where a person telegraphed a guaranty of payment for goods purchased, that the telegraph company was the sender's agent and the sender was bound according to the terms of the message as transmitted, received and delivered to the addressee.

In Price Brokerage Co. v. Chicago, B. & Q. R. Co., 199 S. W. 732, the Kansas City Court of Appeals held that the telegraph company was the agent of the sender, and that the sender was bound by the terms of the telegram actually delivered. See, also, Haubelt Bros. v. Mill Co., 77 Mo. App. 672. The following cases also tend to support the doctrine of agency, although they did not arise on the question of whether the sender was bound by the terms of an erroneous message: Wilson v. Minneapolis & Northwestern R. Co., 31 Minn. 481, 18 N. W. 291; Younker v. Western Union Telegraph Co., 146 Iowa, 499, 125 N. W. 577; Saveland v. Green, 40 Wis. 431; New York & Washington Printing Telegraph Co. v. Dryburg, 35 Pa. 298, 78 Am. Dec. 338; Sherrerd v. Western Union Telegraph Co., 146 Wis. 197, 131 N. W. 341; Durkee v. Vermont Central R. Co., 29 Vt. 128.

The first American case squarely announcing the contrary view is Pepper v. Western Union Telegraph Co., 87 Tenn. 554, 11 S. W. 783, 4 L. R. A. 660, 10 Am. St. Rep. 699, decided in 1889. In the course of its opinion, the court says:

"The telegraph company is in no sense a private agent. It is clothed by the state with certain privileges; it is allowed to exercise the right of eminent domain. In exchange for such franchises it is onerated with certain duties, one of which is the obligation to accept, and transmit over its wires, all messages delivered to it for that purpose. The parties who resort to this instrumentality have no other means of obtaining the benefits of rapid communication, which is the price of its existence. They have no opportunity and no power to supervise or direct the manner or means which the company use in the discharge of their duties to the public in the transmission of messages for particular individuals. They can only deliver to the company a legible copy of what they wish communicated, with no expectation that such paper is to be carried to the party addressed; and their connection with the company there and then ceases. They have contracted with the company to transmit the words of the message to the party addressed, through its own agents, and with its own means. The party receiving the message knows that he is not obtaining any communication direct from the sender, but that he is receiving what the company has taken, and changed the form of, from the paper on which it was written, transmitted by electricity over the wires of the company, and reduced to writing at its destination by an agent of the company; and that it only represents what was written by the sender, in the event that there has been no imperfection in the mechanism of the company, nor negligence in the servants of the company. Knowing the scope of the employment and the methods of transmission, the receiver should be held to know that the sender is bound by the contents of the telegram as received only so far as it is a faithful reproduction of what it sent. He knows, furthermore, that if he acts on the telegram, and it should turn out to have been altered by the negligence or wrongful act of the company, the latter is liable to him for such injury as he may sustain thereby. Ordinarily there is no relation of master and servant between the sender of the telegram and the company. Where this relationship does not exist the principal is not responsible for the torts of the agent, and the negligent delivery of an altered message, when acted on by the receiver to his detriment, is a tort for which the telegraph company alone is responsible. The company retaining exclusive control of the manner of performance, and of its own employees and instrumentalities, the sender of the message being absolutely without voice in the matter, it seems to us that the position of the company to its employer is that of 'independent contractor,' as defined and understood in the well-settled class of cases where the employer is held to be not responsible for the negligence of the contractor in the performance of his work or undertaking. The many and marked differences between the employment of such companies to transmit a dispatch and the employment of a private person to deliver a verbal message are so manifest that we cannot assume the liability of the sender in the first instance, from his conceded liability in the last for the negligence of the instrumentality employed. Such a holding not only does violence to well-settled principles of the law of agency, but may lead to the absolute ruin of the party employing this useful, and now necessary, public medium of rapid transmission of intelligence; so that every consideration of public policy would seem to point to a different result, unless the courts find themselves constrained by the great weight of au-

thority to uphold the contention here made."

The court then reviews the authorities and shows that, with the exception of Telegraph Co. v. Shotter, no American case up to that time had directly adjudged "that the sender of a telegram is bound to the receiver by the terms of the message as negligently altered by the company." The Maine case does not appear to have been considered by the Tennessee court.

Since the decision by the Tennessee court, a number of jurisdictions in this country have adopted the rule that the telegraph company in the transmission of a message is not the agent of the sender, but an independent contractor, a common carrier of intelligence for hire, that it owes a duty both to the sender and sendee for the breach of which either who suffers damage as a proximate result thereof may recover in tort, and that the sender is not bound by the terms of an offer which through error of the telegraph company is different from the telegram delivered to it for transmission. The cases so holding are Harper et al. v. Western Union Telegraph Co., 133 S. C. 55, 130 S. E. 119, 42 A. L. R. 286; Eureka Cotton Mills v. Western Union Teleg. Co., 88 S. C. 498, 70 S. E. 1040, Ann. Cas. 1912C, 1273; Watson v. Paschall et al., 93 S. C. 537, 77 S. E. 291; Shingleur v. Western Union Teleg. Co., 72 Miss. 1030, 18 So. 425, 30 L. R. A. 444, 48 Am. St. Rep. 604; McKee v. Western Union Teleg. Co., 158 Ky. 143, 164 S. W. 348, 51 L. R. A. (N. S.) 439; Postal Teleg. Cable Co. v. Schaefer et al., 110 Ky. 907, 62 S. W. 1119; Pegram y. Western Union Tel. Co., 100 N. C. 28, 6 S. E. 770, 6 Am. St. Rep. 557; Strong et al. v. Western Union Tel. Co., 18 Idaho, 409, 109 P. 910, 30 L. R. A. (N. S.) 409, Ann. Cas. 1912A, 55; Harrison Co. v. Western Union Tel. Co., 3 Willson, Civ. Cas. Ct. App. (Tex.) § 43; Joynes v. Postal Teleg. Cable Co., 37 Pa. Super. Ct. 63; Mechem on Agency (2d Ed.) § 41; Gray, Comm. by Telegraph, §§ 104, 105.

The case of Harper v. Telegraph Co., supra, is reported in 42 A. L. R. at page 286. To it is appended an annotation upon the precise question here presented. The authors of A. L. R. say: "What has been said by many text-writers to be the prevailing view is that the sender of a telegram makes the telegraph company his agent to transmit it, and is bound by the terms of the message as it is delivered, regardless of errors in transmission. But this view has been maintained largely by the citation of cases holding for other purposes that the telegraph company is the agent of the sender, and it is believed that the weight of authority is in favor of the contrary view."

In Postal Tel. Co. v. Schaefer, supra, the court said:

"It is the contention of appellees that appellant was their agent in sending the telegram to Bernstein & Co., and that the delivery of the erroneous message created and gave rise to a valid and enforceable contract on their part to deliver the potatoes to the sendee at the price named, and this view seems to have been taken by the Ohio magistrate who presided in the trial of the suit instituted by Bernstein & Co. against plaintiff; but, in our opinion, this view of the law is an erroneous one, and is in conflict with the great weight of authority both in England and in this country. Gray, in his treatise on Communications by Telegraph (page 189), says: 'A telegraph company may perhaps be called a "special agent," since it is employed to do a particular act, namely, to communicate a certain message. If so, the employer is responsible on the message as delivered only where that message is the one which he authorized the company to communicate, as distinguished from a certain message.' And he refers to Story, Ag. (8th Ed.) §§ 126–133. The same author also says: 'A person who employs a telegraph company authorizes it, and holds it out as authorized, only to communicate a certain message; and, while he is responsible upon the message if the company duly delivers it, he is not responsible, upon any other message which the company may deliver in its stead.' This exact question was fully considered in the case of Pepper v. Telegraph Co., decided by the supreme court of Tennessee, and reported in [87 Tenn. 554] 11 S. W. 783, 4 L. R. A. 661 [10 Am. St. Rep. 699]. In that case the court said, viz.: 'The minds of the party who sends a message in certain words, and the party who receives the message in entirely different words, have never met. Neither can, therefore, be bound the one to the other.' In our opinion, there was no binding or legal obligation resting upon Schaefer & Sons to have delivered the potatoes to Bernstein & Co. at the price erroneously communicated by the message which was delivered to them by the appellant company."

After reviewing many of the cases last above cited, the court in Eureka Cotton Mills v. Western Union Tel. Co., supra, said:

"The rule laid down in these cases seems to be the true rule, and should be adopted in justice to both the sender and addressee of a message. Should the telegraph company be

held strictly the agent of the sender, then the addressee could never have a cause of action against the telegraph company, however great his damage might be. His only remedy would be against the principal, the sender of the message, and not against the agent. The sender would be forced to make good the loss sustained by the addressee, and in turn reimburse himself by a claim or action for damages against his agent, the telegraph company. Neither does it seem just that the sender should be bound by a contract into which he never intended to enter, or to comply with an offer he in fact has never made, simply because he used the telegraph as a means of communication, when the telegraph company is universally used for such purposes in the business world, and enjoys all the privileges, and is charged by law with all the liabilities of a common carrier.

"On the other hand, should the court adopt the view that the telegraph company is not the agent of either party, but an independent contractor, either party who is injured by its negligence has a right of action in tort against the telegraph company for whatever damages flow from such negligence. Neither party should be bound by a message erroneously transmitted, for the sender has never authorized such a message to be sent. It is a mistake, and no contract arises. The sender, with notice of the error, should refuse to comply with the terms of the message, and, if the addressee has acted upon the message, and thereby sustains loss, he has his remedy against the telegraph company, the wrongdoer."

[1] The telegraph company is a public service corporation. Its rates, rules, and practices are regulated and fixed by law. It is required to accept and transmit on payment of the proper tolls all messages tendered in compliance with the rules. It is under legal obligation to serve the public without discrimination as to persons, rates or practices. The sender of a message in nowise controls the service rendered by the telegraph company. The latter selects its own instrumentalities, its own particular employees, and its own methods for transmitting a message. The sender employs the telegraph company to deliver to the addressee of the message, not the original message filed, but a true copy thereof. Such being the character of a telegraph company and the nature of the service it renders, it logically follows that the relation between the sender and the telegraph company is not that of principal and agent in the usual sense of those terms but rather that of employer and independent contrac-

tor, that the telegraph company is authorized only to transmit the message filed by the sender, and that if it goes beyond that authority and delivers a message containing an offer in terms different from the original message filed by the sender for transmission, the latter is not bound by the offer as expressed in the erroneous message delivered.

Since the telegraph company is a public service corporation, a common carrier of intelligence for hire, it owes a duty to both sender and sendee for the breach of which either who suffers damages as a proximate result thereof may recover in tort. Its relation to the sender is also contractual. Shingleur v. Telegraph Co., supra; Harper v. Telegraph Co., supra.

[2] We accordingly conclude that Cowin & Co. was not bound by the terms of the offer as expressed in the erroneous message delivered to the Construction Company; that Cowin & Co. was not obligated to furnish the steel either for $25,100 or $25,600; that when it contracted to furnish such steel at $25,600 it acted voluntarily, and not because of any existing legal obligation so to do; and that it proved no substantial damage as a result of the error of the Telegraph Company.

It becomes unnecessary to consider the other contentions of the Telegraph Company.

For the reasons above stated the judgment is reversed and the cause remanded, with instructions to grant the Telegraph Company a new trial.