TATE, Judge.
The defendant telegraph company (hereinafter “Western Union”) appeals from judgment holding it liable for $2,984.49 of monetary damages sustained by the plaintiff rice mill (“Estherwood”) through the erroneous transmission of a telegraphic message.
The defendant-appellant principally contends : (a) that recovery for such damages is not permissible under federal law, which exclusively governs the question despite state law to the contrary; (b) that Esther-wood cannot recover the losses sustained because the erroneous telegraphic message did not result in a binding contract, so that the voluntary compliance by Estherwood rather than any negligence of Western Union was the cause of the loss.
The undisputed facts show the following :
The Commodity Credit Corporation (“CCC”) advertised for bids on some three hundred lots of rice by announcement DL-RR-1.56. The advertisement for the bids called for the successful bidder on each lot to purchase the rough rice described in each lot for a certain listed price, to mill it at the bidder’s expense, and then to resell it to the CCC at the price per pocket (i. e., per hundred pounds of rice) named in the bid, the successful bidder to pay all transportation costs. Included in *232 the advertisement for bids were: Lot 315, consisting of Zenith rough rice, from which the successful bidder was required to sell back to the CCC 509 pockets of milled rice at the price bid; and Lot 315, consisting of Patna rough rice, from which the successful purchaser was required to sell back to the CCC 1640 pockets of milled rice at the price bid.
The deadline to receive bids was at noon on May 31, 1956. That morning the plaintiff, Estherwood, sent the draft of a bid on sixteen lots of rice, per the advertisement, to be telegraphed from Western Union’s Crowley office to the CCC office in Dallas, Texas. In the plaintiff’s draft was a bid $8.49 per cwt on Lot 315; however, through admitted error of transmission, the telegraphed bid actually received by the CCC was a bid for that amount upon Lot 315.
For an additional charge, the plaintiff had also ordered a “repeat message”, by which the message as received in Dallas was to be transmitted back to Crowley, so that the plaintiff by comparing the copy of the “repeat message” as received back by the Crowley Western Union office could ascertain that his- intended bid was actually received by the CCC — in short, to avoid mistakes such as that which occurred herein. However, by a second admittedly negligent act of Western Union’s employees, the copy of the repeat message received by the plaintiff indicated that the bid to the CCC had been (as intended) on Lot 315, whereas the repeat message should have shown that the message as received in Dallas had been mistakenly submitted upon Lot 315. (Had it done so, as plaintiff notes, then it was open to Estherwood to correct or amend its bid before the closing date.)
The mistake was not discovered until June 2, 1956, when by telegraphed and written confirmation the CCC accepted Estherwood’s bid of $8.69 on Lot 315. Estherwood’s president telephoned the CCC’s rice purchasing officer in charge of the bidding and was informed that despite the unfortunate mistake the CCC considered the sender bound. Estherwood thereupon complied with the contract.
The evidence reflects without contradiction that the cost of milling and transporting the rough rice was $10.51 per hundredweight of milled rice, for which per the bid only $8.69 was received, and that there was a net loss of $2,984.80, the amount awarded by the trial court.
There is no question that under state law the defendant is liable for the damages proximately caused by its negligent transmission of the telegram and repeat message. Aside from the provision of LSA-C.C. Article 2315 that tortfeasors are responsible for the damages caused by their torts, it is specifically provided by LSA-R.S. 45:785 that:
“All persons operating telegraph or telephone lines or systems and doing business in this state, are hereby required to pay for all damages that may arise from the failure, refusal or neglect to transmit or to deliver, or from any delay in the transmission or the delivery, or from any error made in the transmission or the delivery of any message handled by them or offered them for transmission; and they may be sued either at the place where the message is to be delivered or at the place where the message is offered for transmission or at the domicile of such persons, at the option of the party bringing the suit.”
Despite the scholarly arguments of eminent counsel for .the defendant-appellee, we are unable to find that this provision of state law is in conflict with federal statute[1] or the cited decisions .relative to fed *233 eral law. See also 86 C.J.S. verbo Tel. & Tel., Radio & Television §§ 172 et seq., pp. 203 et seq., § 225, p. 243.
It may indeed be that a contractual provision limiting' the telegraph company’s liability for errors in messages sent will, when approved by the federal regulatory agency in connection with its rate-making function, override state authorities permitting a greater recovery (Western Union Telegraph Co. v. Esteve Bros., 1921, 256 U.S. 566, 41 S.Ct. 584, 585, 65 L.Ed. 1094; Postal Telegraph-Cable Co. v. Warren-Godwin Lbr. Co., 1919, 251 U.S. 27, 40 S.Ct. 69, 64 L.Ed. 118; see Annotation, “Construction and effect of provision on telegraph blanks as to limitation of liability”, 20 A.L.R.2d 761); likewise, state statute or jurisprudence notwithstanding, it is possible that recovery for mental anguish so arising may not be awarded (Western Union Tel. Co. v. Brown, 234 U.S. 542, 34 S.Ct. 955, 58 L.Ed. 1457, 1914; Kaufman v. Western Union Tel. Co., 5 Cir., 1955, 224 F.2d 723) ; but these are not of course the questions before us, for it is not contended that any stipulation limiting liability bars or limits recovery in this suit for the purely monetary damages caused by the error in transmission.
Arguing that the previously cited cases require us to apply federal decisions, able counsel then argues that under federal case law the telegraph company is the agent of neither the sender or the receiver, so that the sender is not bound by an offer which is erroneously expressed by the company when delivered and thus cannot recover damages for an unenforceable contract voluntarily performed, citing Western Union Tel. Co. v. Cowin & Co., 8 Cir., 1927, 20 F.2d 103, 54 A.L.R. 1362.
Whatever validity this holding might have under its own facts (but see 1 Corbin on Contracts, 1950, S. 105, p. 330 et seq.; 86 C.J.S. verbo Tel. & Tel., Radio & Television § 212, p. 235; Holtz v. Western Union Tel. Co., 1936, 294 Mass. 543, 3 N.E.2d 180), it is not applicable to the facts of this case where the parties had agreed to be bound by the terms of the offer as received by the CCC [2], as found by the trial court and as corroborated by the uncon-tradicted testimony that such was the custom and understanding of the rice industry (Tr. 87-88, 92, 93, 96, 99, 110-111), there being considerable variation in the price of the commodity. Thus a binding contract resulted from the CCC’s acceptance (prior to discovery of the error) of the offer as received. “Plaintiff, in order to relieve defendant from liability for losses which will occur thereunder, need not rescind or break a contract which has been entered into as a result of the breach by defendant and before the breach of duty was discovered,” 86 C.J.S. verbo Tel. & Tel., Radio & Television § 212, p. 235.
*234 The defendant also produced a witness who testified that the plaintiff Estherwood’s bid, about $2 less than the others on Lot 316, was so obviously low that the CCC should have realized a mistake had been made, apparently relying upon the principle that “If the offeree knows or has reason to know that such a change has occurred, he has no power to bind the offeror by an acceptance of the offer as delivered,” 1 Corbin on Contracts (1950), Section 105, p. 330. We are not required to pass upon whether such a principle is applicable to the type of contract here involved, however, because we find no error in the trial court’s acceptance, as factually to the contrary proving, of the testimony of three other witnesses, including the federal purchasing officer, that the bid was not an obvious error, since there is great variation in rice bids, sometimes as much as $4-$5 per hundredweight.
For the foregoing reasons, the trial court judgment is affirmed; all costs to be paid by the defendant-appellant.
Affirmed.

. The only federal statute cited to us by counsel is 47 U.S.O.A. § 206 (“Carriers’ liability for damages”), which was enacted on June 19, 1934, c. 652, subsequent to many of the decisions cited by counsel, and which provides:
“In case any common carrier shall do, or cause or permit to be done, any act, *233 matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney’s fee, to be fixed by the court in every case of recovery, which attorney’s fee shall be taxed and collected as part of the costs in the case.”

. gee Provision III of announcement calling for bids, Tr. 39: “This announcement, the supplemental schedule, the bid (all bids which are accepted, in the event the bidder bids on more than one offer lot on the supplemental schedule), and the letter of acceptance shall constitute the entire contract between the bidder and OOO.” See also Article 6, Uniform Contractual Provisions, Commodity Stablization Service, which specifically formed part of the announcement (Tr. 50), to the terms of which all bids were made subject (see Tr. 37, Provision II a), which provides: “No offer, amendment thereto, or withdrawal thereof will be considered after the closing time for the receipt of offers, unless in the opinion of the Agency * * * (b) the amendment is made for the purpose of correcting an error apparent on the face of the original offer * * * ” (Tr. 56).